IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| **ROMSPEN INVESTMENT LP** | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 C 11031 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| **MFI-MIAMI HOLDINGS LLC et al,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Romspen Investment LP, is currently involved in an eighteen-month-old case in the Southern District of Florida and, as part of discovery in that case, has issued subpoenas from that court for production of documents to Adeena Weiss-Ortiz and the law firm of Weiss-Ortiz P.C. At the time, Weiss-Ortiz and her firm were representing the defendants in the Southern District of Florida case, and she objected to the subpoenas. Romspen filed a motion to compel compliance with the subpoenas pursuant to Fed.R.Civ.P. 45(d)(2)(B)(i) because, although the case is proceeding in Florida and the target of the subpoenas was defendant's counsel, the plaintiff designated the place for production of those documents as plaintiff's counsel's law firm, Bryan Cave Leighton Paisner, LLP, in downtown Chicago. Over the course of three months, the parties filed a few briefs regarding this dispute [Dkt. ##1, 16-19, 21, 25] and on January 27, 2025, Judge Seeger referred the matter to me.

This case is, to put it bluntly, a mess. The tale is a difficult one to distill from the seven hundred or so pages of filings the parties have heaped this court. And that's just about a couple of subpoenas which are only the tip of a decade-old litigation iceberg. All this dates back to at least 2010. At that time, Adeena Weiss-Ortiz – the target of the subpoenas at issue – was becoming embroiled in a dispute with her mother, Caroline Weiss, over the ownership interests in real estate in Dade County, Florida. Jake Weiss – Adeena's father and Caroline's husband – died in 1995. While we don't have anywhere near all the details – and it would probably not be humanly possible to set them out if we did, judging from the

parties' voluminous and not always congruent submissions – the mother-daughter dispute over the property really heated up in 2014 when daughter Adeena Ortiz-Weiss filed a lawsuit to quiet title against the mom (and others) in Dade County. Romspen's counsel refers to that one as *Weiss-Ortiz I.* After about eight long years, Weiss-Ortiz lost that one on summary judgment and filed an appeal. Toward the end of *Weiss-Ortiz I*, in March 2020, Romspen apparently took over on the mortgage – a $21 million deal – on the Dade County property. And Weiss-Ortiz filed suit against them in Dade County in April 2022. That was *Weiss-Ortiz II*.[1] That one got dismissed with prejudice a few months later and Weiss-Ortiz appealed that ruling in August 2022. Those appeals were consolidated and in October 2023, Florida's Third District Court of Appeals ruled in Weiss-Ortiz's favor and remanded the cases for further proceedings. The court held that there was a triable issue of fact as to whether the deed was procured by fraud and the mortgage fraudulent. *Weiss v. BI 27, LLC*, 388 So. 3d 189, 193 (Fla. Dist. Ct. App. 2023).

At this point, we have to spin the calendar back a bit because it's about here where the defendants in the Southern District of Florida case – the one with the subpoena dispute – enter the picture. Stephen Dibert and the Miami Fraud Investigations companies say they investigate fraud and offer assistance to attorneys. https://mfi-miami.com/introduction-to-mfi-miami/. Dibert posts a blog about the topic as Muad'Dib, https://mfi-miami.com/mfi-miami-blog/ – hopefully with apologies to Frank Herbert – and beginning in May 2022, became "interested" in Romspen. According to Romspen, he began posting "false, misleading, and defamatory statements about Romspen and Romspen Mortgage." [Dkt. #1, Pars. 34-38]. At least one mentioned Weiss-Ortiz's fraud claim against Romspen. Romspen filed suit against Dibert, the MFI companies, and Weiss-Ortiz for defamation and civil conspiracy in June 2023. It's unclear what they charged Weiss-Ortiz with – somehow conspiring with Dibert in his blog posting – but after Romspen filed an amended Complaint, Weiss-Ortiz sought to be dismissed from the case with

---

[1] When lawsuits come with Roman numerals like Super Bowls, you're in a world of trouble if you're the court trying to peer through the parties' "versions" of the story and actually see what's been going on. *See also Ortiz v. Weiss*, 227 So. 3d 689 (Fla. 3d DCA 2017); *Ortiz v. Weiss*, 282 So. 3d 949 (Fla. 3d DCA 2019); *Weiss v. Weiss*, 317 So. 3d 167 (Fla. 3d DCA 2021).

prejudice November 9, 2023. 2023 WL 8582264. On November 13, 2023, Romspen moved to dismiss Weiss-Ortiz from its lawsuit *without* prejudice. 2023 WL 8582262. And that gets us to the current and third version of Romspen's Complaint, filed December 14, 2023, which names only Dibert and the MFI companies as defendants. But, although no longer a named defendant, Weiss-Ortiz waded back into this swamp as counsel for Dibert and the MFI companies on January 25, 2024.[2]

We are told that discovery in the case began in August of 2024. A couple of months later, late on the night of Tuesday, October 1st – and we are almost to the point where the Northern District of Illinois gets dragged into this – Romspen emailed Weiss-Ortiz, attaching two subpoenas making fourteen document requests each and asking whether she would accept service by email. Romspen did that again the next afternoon, which was Wednesday, October 2nd . [Dkt. #1-3]. Romspen's counsel also sent the subpoenas by certified mail that same day. [Dkt. #1-4]. But, that Wednesday through Friday was also Rosh Hoshanah, and Weiss-Ortiz was observing the religious holiday as, apparently, Romspen's counsel had been informed. [Dkt. #17-5]. When she got back on Monday, October 7th , she had 28 emails and 6 different threads, all from Romspen's counsel, waiting for her. [Dkt. #17-5]. Not to take sides in what is an all-too-typical squabble between lawyers, but that's a bit much.

In any event, on the Monday afternoon following the holiday, Weiss-Ortiz addressed a number of issues Romspen's counsel had raised, including the subpoenas, saying tersely: "I object to you issuing me subpoenas. All the information that you seek is subject to the Attorney-client and work product privileges. This objection is made pursuant to federal rule of civil procedure 45." [Dkt. #17-5]. That evening, Romspen's counsel responded, complaining that the objection to the subpoenas was:

> not responsive to my emails below. My question is (and has been) will you accept service by email of the subpoenas directed to you and your law firm, which I provided to you by email on October 1 (and which I re-attach here). As you know, accepting service of a subpoena is distinct from raising objections to the merits of the subpoena, which comes at

---

[2] Ortiz-Weiss recently withdrew as counsel for Dibert and the MFI companies on January 14, 2025 [Dkt. #25-3].

3

a later time. So, will you accept email service of the attached subpoenas?" [Dkt. #1-3]. Romspen's counsel continued to "email-bomb" Weiss-Ortiz's office, sending another 15 in about 24 hours from October 8th to 9th. [Dkt. #17-6]. In one of those, he again asked if Weiss-Ortiz would accept service of the subpoenas by email the next evening [Dkt. #1-3], even though Weiss-Ortiz had received the subpoenas on October 7th and signed the return receipt. On the morning of October 9th, Weiss-Ortiz apparently wrote that "subpoenas were delivered certified mail, as you know, since you since received the certified mail receipt. Ms. Weiss objected to your subpoena via email on October 7. [Ms. Weiss-Ortiz's objection appears in the emails below.] The deadline to respond has not passed." [Dkt. #1-3].

Again, the two subpoenas each made fourteen document requests and set the deadline for production as October 18, 2024. [Dkt. #1-2]. As the subpoenas were not received by certified mail until October 7th, there might have been a question as to whether that allow a reasonable time for compliance. *See, e.g., Bierk v. Tango Mobile, LLC*, No. 19 C 5167, 2021 WL 1837376, at *1 (N.D. Ill. May 7, 2021)("Fed.R.Civ.P. 45(d)(2)(B) suggests that 14 days is the benchmark for compliance, and a number of courts have suggested that under 14 days for compliance is unreasonable."); *Sec. & Exch. Comm'n v. Levine*, No. 09-80135-MC, 2009 WL 10712514, at *6 (S.D. Fla. May 5, 2009) In any event, on October 16th, Weiss-Ortiz's office indicated she would be out of town until Monday, October 21st and would "tender her responses to the subpoenas issued then." [Dkt. #1-5]. But, no responses came and Romspen's counsel emailed on October 22nd demanding Weiss-Ortiz address several issues including the overdue subpoena responses.

Another two days went by and Weiss-Ortiz's office said she would be available for a telephone conference on October 31st. [Dkt. #16, Page 12 of 13]. On the morning of October 24th, Romspen's counsel wrote that while he "continues to contend that Defendants are not being reasonably cooperative or reasonably available in this matter, let's put a telephone call on the calendar for October 31 at 10:00 ET / 9:00 CT, for whatever matter issues remain open at that time." [Dkt. # 18-3]. Despite that email,

4

Romspen's counsel filed a motion to enforce the subpoenas here in the Northern District of Illinois the evening of the 24th, a full week before the parties' meeting. For good measure, Ortiz-Weiss filed a motion to quash the subpoenas in the Southern District of Florida on November 20th, but withdrew the motion when the judge down there deferred to Romspen's earlier filing here.

After reviewing the 700 pages of filings herein the Northern District of Illinois, flipping back and forth between those and the rulings on the docket in the Southern District of Florida, and injecting a smidgen of common sense into these proceedings, it has to be said that Ortiz-Weiss had the right idea putting this dispute before the judge presiding over the parties' litigation in Florida. Under Fed.R.Civ.P. 45(f), "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." The Advisory Committee notes explain that, in determining whether exceptional circumstances are at play, the court's:

> prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to rise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed.R.Civ.P.45(f)(advisory committee note).

First, let's look at "burdens on local nonparties." That's an understandable concern from the Advisory Committee given Fed.R.Civ.P. 45(d)(1)'s command that those serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." And if that person is a non-party, the concern is underscored. *See, e.g., Little v. JB Pritzker for Governor*, 2020 WL 1939358, at *1 (N.D. Ill. 2020); *HTG Capital Partners, LLC v. Doe(s)*, 2015 WL 5611333, at *3 (N.D. Ill. 2015); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013); *United States v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, at *4–5 (N.D. Ill. 2005); *United States ex rel. Tyson v.*

5

*Amerigroup Illinois, Inc.*, 2005 WL 3111972, at *4 (N.D. Ill. 2005). It's one thing for parties to subject one another to the rigors of discovery – rightly regarded as "the bane of modern litigation," *Rossetto v. Past Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000) — but non-parties have a different set of expectations. To put it colloquially, "a non-party doesn't usually have a horse in the race." *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 C 1853, 2017 WL 1233047, at *3 (N.D. Ill. Apr. 4, 2017); *see also Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020); *Reed v. Illinois*, 318 F.R.D. 77, 79 (N.D. Ill. 2016); *Robinson v. Stanley*, No. 06 C 5158, 2010 WL 1005736, at *3 (N.D. Ill. Mar. 17, 2010). But, these concerns do not really apply here.

Ortiz-Weiss has been intimately involved in the litigation in Florida throughout the proceedings. She was a defendant for the first five months of the case, and while she was dismissed, she was dismissed without prejudice. Then, until very recently, she was counsel for the remaining defendants for about a year. She continues to be subject to motion practice from Romspen's counsel in the Florida litigation. [Dkt. #25-3]. So, she's a non-party in name only. She even filed her motion to quash in the Southern District of Florida so, it's not as though there is a burden on her complying with a documents subpoena one place or another. There's this new-fangled thing called the internet where folks can deliver documents electronically. See also Fed.R.Civ.P. 45(d)(2)(A)("Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial."). And, to be frank, after review of the history of this case, all the emails and motion practice, the suspicion is that when Romspen's counsel file the motion to enforce the subpoenas here, he wasn't trying to "avoid imposing undue burden or expense on" Ortiz-Weiss. Fed.R.Civ.P. 45(d)(1).

6

Second, we're not just "assum[ing] that the issuing court is in a superior position to resolve subpoena-related motions." It clearly is. Transfer under Rule 45(f) "allows for consolidation of motions in a single appropriate court, thereby avoiding piecemeal litigation in multiple fora as well as piecemeal appeals." *P.H. Glatfelter Co. v. Windward Prospects Ltd.*, 847 F.3d 452, 458 (7th Cir. 2017); *see also Powell v. UHG 1 LLC*, No. 1:23-CV-06389, 2024 WL 4286960, at *4 (N.D. Ill. Sept. 25, 2024)( ". . . transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."). The issuing court has been handling motion practice from Romspen's counsel and Weiss-Ortiz for a year and a half. It has been overseeing discovery since last October. It has already begun dealing with motions to compel and with privilege claims. It has already rejected one privilege log[3] and already has before it a revised version filed by Weiss-Ortiz as counsel for Dibert and the MFI companies covering over five dozen communications between Weiss-Ortiz and her clients. [Dkt. #25-6]. It's unclear if those documents overlap with the documents at issue here, but rulings on claims of privilege – like all discovery rulings – are a matter of discretion. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Alicea v. County of Cook*, 88 F.4th 1209, 1218 (7th Cir. 2023); *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022). That means that "it is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both." *Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 635 (7th Cir. 2011); *United States v. Williams*, 81 F.3d 1434, 1437 (7th Cir. 1996). Consistent discretionary rulings would be ideal. With two courts 1200 miles apart judges poring over documents in the same case, there is a real danger of conflicting rulings regarding claims of privilege, relevance, and proportionality to the needs of the case. As the Southern District of Florida has said:

---

[3] On November 24 of last year the Florida court entered a:

"paperless order amending [144] the Court's prior Order on the parties' Joint Motion for Discovery. Defense counsel shall advise Plaintiff's counsel by 12/4/24 of the demands for which she has responsive documents; Plaintiff's counsel shall narrow the discovery requests by 12/13/24; and Defendants must provide amended responses and a revised privilege log by 1/10/25. Signed by Magistrate Judge Bruce E. Reinhart on 11/25/2024.

Objections based on privilege, lack of relevance, and undue burden, require the Court to make a determination as to the relevance of the requested materials. Such determinations, if made by courts in different districts, have the real potential for disruption in the underlying litigation.

*Exist, Inc. v. Shoreline Wear, Inc.*, No. 15-61917-MC-DIMITROULEAS/Snow, 2015 WL 13694080 (S.D. Fla. Oct. 16, 2015); *see also Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, No. 19-MC-60040-CIV, 2019 WL 13256101, at *4 (S.D. Fla. Mar. 18, 2019).

In sum, the Southern District of Florida is well-acquainted with the facts of this case and is in the superior position to resolve the subpoena issues. Accordingly, the Clerk of Court is directed to transfer this matter to the United States District Court for the Southern District of Florida.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE: 2/3/25**